# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| TOMMY PRICHARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:18-cv-556-ALB-SMD |
| | ) | |
| HYUNDAI MOTOR MANUFACTURING OF ALABAMA, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tommy Prichard brought this action against his former employer, Defendant Hyundai Motor Manufacturing Alabama, LLC ("Hyundai"), alleging retaliation in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"). This matter comes before the Court on Defendant's Motion for Summary Judgment. (Doc. 22). For the reasons stated below, the motion is due to be granted.

## BACKGROUND

Hyundai, an automobile manufacturer, hired Prichard around August 2012 as a laborer in the weld shop at its Montgomery, Alabama facility. Sometime in 2016, Prichard was moved to a position in General Assembly. Prichard's Team Leader in

General Assembly was Paul Brand, his Group Leader was Tim Lucas, and his Assistant Manager was Anthony Davis.[1]

## I.  Prichard's Intermittent FMLA Leave

Sometime before 2011, Prichard was diagnosed with migraine headaches, and by 2013, he was being treated by a physician for his migraines. When Prichard had a migraine, he was unable to work and became bedbound. As a result, Prichard sought intermittent FMLA leave in 2013.

Hyundai uses a third-party administrator, The Hartford, to administer its employees' FMLA leave. Prichard followed all necessary procedures provided by Hyundai and The Hartford to receive intermittent FMLA leave, including submitting a Certification of Health Care Provider Employee's Serious Health Condition. Prichard was approved for intermittent FMLA leave and was entitled to take such leave as long as he did it honestly and with integrity and gave proper notification of his leave in accordance with Hyundai's policies. Prichard renewed his FMLA certification every six months as required, and though the exact wording in the certifications varied slightly, Prichard's physician generally certified that "[o]n the

---

[1] Team Leaders are not supervisors and do not have the authority to discipline, hire, fire, or change the pay of employees. Team Leaders report to Group Leaders, who make sure time reports are accurate and exercise supervisory authority over employees. Group Leaders report to Assistant Managers.

days [Prichard's] Migraine HA's flare [sic] he will be unable to work. He is bed bound unable to function." (Doc. 24-2 at 39).

According to The Hartford's records, Prichard took FMLA leave numerous times in 2013, 2014, 2015, 2016, 2017, and 2018. Prior to being moved to General Assembly in 2016, Prichard claims that his Team Leader in the weld shop, Craig Haye, harassed him about taking FMLA leave by asking him questions like "You coming? You coming to work tomorrow?" and cracking jokes about him being absent. (Doc. 24-2 at 35:9-36:5). Prichard claims that this alleged harassment continued after he was moved to General Assembly in 2016 when his Team Leader, Paul Brand, made similar comments to him about being absent. Neither Haye nor Brand were involved in the decision to terminate Prichard or the investigation that led to Prichard's termination.

## II. Hyundai's Suspicion About Prichard's Alleged Misuse of FMLA Leave

In 2018, Hyundai noticed a pattern in which Prichard often took FMLA leave on Fridays before non-production days. Prior to March 2, 2018, there were eight Fridays in 2018. Prichard worked three of them and used FMLA leave for four others. The only other Friday was a non-production day, which was not a working day for Prichard.

Hyundai has a Medical Review Committee ("MRC") that meets weekly to discuss various medical issues, such as employee work restrictions, requests to

employees for medical or leave paperwork, and potentially fraudulent use or abuse of FMLA and other leave and benefit programs. Robert Burns, then-Director of Team Relations, Public Relations, General Affairs, and Human Resources, was the decisionmaker of the MRC, and in that role, authorized and oversaw the investigation of suspected abuses of certain leave and benefit programs provided by Hyundai, including FMLA leave. Team Relations is responsible for addressing various employee concerns, including investigating alleged policy violations by employees.

It is unclear from the record how Prichard's alleged pattern of Friday absences was brought to the MRC's attention. Nevertheless, on February 22, 2018, the MRC met and discussed Prichard's medical leave. Burns reviewed a 2018 calendar showing the days on which Prichard had taken FMLA leave, and based on what appeared to be a pattern of Prichard taking Fridays off, Burns ultimately authorized and directed Team Relations to hire a private investigator to investigate and surveil Prichard's use of FMLA leave. Burns's decision to surveil Prichard was not based on a standard or policy defining what constitutes a pattern of abuse for FMLA leave.

## III. Prichard's Termination

On Friday, March 2, 2018, Prichard was scheduled to work on the second shift, beginning at 2:30 p.m. There are two accounts as to what happened on March 2.

According to Prichard, he left his house in Calera, Alabama, around 8:00 a.m. to run errands in Birmingham, Alabama. After Prichard got his car washed, got a haircut, and ate breakfast, he felt the onset of a migraine. When Prichard had a migraine and needed to miss work, he was required to call his supervisor and the Medical Department at Hyundai and either call The Hartford or use its website to report the absence. Between 11:35 and 11:40 a.m., Prichard properly notified both Hyundai and The Hartford of his need to take FMLA leave that day. Prichard then went home, took his medication, and went to bed. He estimates that he got home between 12:00 p.m. and 1:00 p.m.

According to Hyundai's private investigator, who conducted surveillance of Prichard on March 2, the investigator began observing Prichard's house around 7:00 a.m. He reported that Prichard left his house around 8:13 a.m. and drove to Birmingham. After losing Prichard in Birmingham, the investigator returned to Prichard's house around 10:15 a.m. and stayed until 3:35 p.m. During that time, the investigator did not see Prichard return home. While conducting surveillance, the investigator took notes regarding his activities and observations and at what times those activities and observations took place, which he later turned into a chronology or report.

The MRC met on March 8, 2018, and discussed, among other things, Prichard's medical leave. The information in the investigator's report was

communicated to the MRC during this meeting, at which time the MRC determined that Team Relations should obtain a statement from Prichard and submit a summary for the Employment Review Committee ("ERC") to determine whether Prichard's actions violated Hyundai policy.

On March 9, 2018, Team Relations employees Marie Byrd and Sheila King met with Prichard regarding Hyundai's investigation into his alleged misuse of FMLA leave and sought his response to the investigator's report. During the meeting, Prichard became defensive. In sum, Prichard informed them that he followed the proper procedures for FMLA leave and did not think he needed to tell them his personal business, stated that they had everything they needed regarding his absence, and refused to answer their questions about his whereabouts on March 2.

On March 23, 2018, the ERC met to discuss whether Prichard should be terminated. Hyundai has a progressive corrective action process that includes discussion planners that are non-disciplinary in nature and four levels of corrective action phases. But under Hyundai's policy, Serious Misconduct Offenses, including intentionally providing false information such as leave information, may result in immediate termination.

During the March 23 meeting, Byrd presented a summary of her investigation, which included, among other things, the investigator's observations about Prichard's

whereabouts on March 2 and Byrd and King's subsequent interview of Prichard. At this meeting, then-Senior Manager of Human Resources Scott Gordy made the decision to terminate Prichard. According to Gordy, he decided to terminate Prichard because all the evidence—Prichard's trend of using FMLA leave before non-production days, the summary of the investigator's report, which stated that Prichard was still out of town at the time his shift started and at least one hour thereafter, and Prichard's refusal to answer questions during the investigation—indicated to him that Prichard had falsified his FMLA leave.

On April 2, 2018, Hyundai issued a termination letter to Prichard. Though Prichard could have submitted his termination for Team Member Review—a review and appeal procedure available to non-probationary employees terminated for reasons other than workplace violence—he did not do so. Prichard filed this action on June 5, 2018.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013).

7

If the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001). But "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1996). The Court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

## DISCUSSION

### I.  FMLA Retaliation

Plaintiff claims that Defendant retaliated against him in violation of the FMLA when it terminated him because he used FMLA leave. To succeed on an FMLA retaliation claim, an employee must demonstrate that the employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). Absent direct evidence, a claim

8

for FMLA retaliation is analyzed under the burden-shifting framework established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.*

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that (1) he engaged in statutorily protected conduct, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse employment action. *Id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, non-retaliatory reason for the adverse action. *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). Once the employer satisfies its burden of production, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely pretext for retaliation. *Id.* at 1244.

A. Plaintiff's *Prima Facie* Case

Defendant does not dispute, at least for summary judgment purposes, that Plaintiff has established the first two elements of his *prima facie* case. Prichard engaged in protected activity by taking FMLA leave, and he suffered an adverse employment action when he was terminated. Defendant instead argues that Plaintiff's *prima facie* case fails because Plaintiff cannot show a causal connection between his taking FMLA leave and his termination.

A plaintiff can establish a causal connection by showing that the protected activity and the adverse employment action were not "wholly unrelated." *Brungart*

*v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection," except when the plaintiff relies on temporal proximity alone and "there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Id.* Mere temporal proximity must be "very close." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). The Eleventh Circuit has recognized that "a period as much as one month between the protected expression and the adverse action is not too protracted" to show a causal connection but a three to four-month period is insufficient. *Id.*

Here, there is no dispute that the relevant decisionmaker, Scott Gordy, was aware of Prichard's use of FMLA leave. Further, Prichard was terminated exactly one month after he used FMLA leave, and his termination letter explicitly states that his use of FMLA leave on March 2, 2018, was in "direct violation of the medical restrictions of being 'bed bound and unable to function' imposed by [his] physician in association with [his] intermittent FML claim." (Doc. 27-14). In other words, Hyundai acknowledges that Prichard's use of FMLA leave on March 2, 2018—albeit alleged misuse, according to Hyundai—was the action that led to his termination. Thus, viewing the evidence in the light most favorable to Plaintiff, the Court finds

sufficient evidence of a causal connection for purposes of Plaintiff's *prima facie* case.

B. Defendant's Legitimate, Non-Retaliatory Reason

Though Plaintiff has established a *prima facie* case, Defendant has articulated a legitimate, non-retaliatory reason for Plaintiff's termination: Prichard was terminated because Hyundai had a good faith belief that Prichard misused FMLA leave. *See, e.g.*, *Green v. MOBIS Ala., LLC*, 613 F. App'x 788, 794 (11th Cir. 2015) (finding employer's good faith belief that doctor's notes were falsified was non-retaliatory reason for termination); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (concluding that an employer's good faith belief that plaintiff lied in an investigation was legitimate, non-discriminatory reason); *Rydalch v. Southwest Airlines*, No. 1:09-cv-00178, 2011 WL 3349848, at *3 (D. Utah Aug. 3, 2011) ("An employer's belief that an employee is misusing FMLA leave provides sufficient justification to terminate his employment if that belief is honest."). Plaintiff does not dispute that Defendant has satisfied its burden at this stage of the analysis. He argues only that Defendant's proffered reason is pretext for retaliation.[2]

C. Pretext

---

[2] In his Response in Opposition to Motion for Summary Judgment (Doc. 27), Plaintiff addresses the factual circumstances that led up to and support Defendant's proffered reason for termination as if they were separate reasons for termination. Because Defendant has articulated only one reason for termination, the Court construes Plaintiff's arguments in the context of that reason.

To show pretext, a plaintiff must demonstrate that the defendant's proffered reason for his termination was false and that the real reason was unlawful retaliation. *See, e.g.*, *Worley v. City of Lilburn*, 408 F. App'x 248, 251 (11th Cir. 2011). Here, where Hyundai's asserted reason for Prichard's termination is its good faith belief that Prichard misused FMLA leave, the question is not whether Prichard actually misused FMLA leave but whether Hyundai reasonably believed that he did. *See Green v. MOBIS Ala., LLC*, 613 F. App'x 788, 794-95 (11th Cir. 2015); *Jackson v. BNSF Ry. Co.*, 751 F. App'x 509, 512 (5th Cir. 2018) (recognizing that defendant's good faith belief that employee was abusing FMLA leave was legitimate, non-retaliatory reason, even if it turned out to be mistaken). In other words, the question is whether Hyundai's "description of its reason is honest."[3] *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997); *see Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1312-13 (10th Cir. 2017) (same).

Plaintiff makes three arguments that a reasonable jury could conclude Defendant's proffered reason is pretext for retaliation. None is persuasive.

---

[3] The Court recognizes the split in authority—even among the district courts in the Eleventh Circuit—regarding whether a defendant has the burden to show that it reasonably relied on particularized facts at the time of termination to establish an honestly held belief. *See Dewitt v. Southwestern Bell Tel. Co.*, 845 F.3d 1299, 1312-13 (10th Cir. 2017) (rejecting this heightened variation of the honest-belief rule but discussing the split in authority between courts adopting the honest-belief rule and the heightened variation of the honest-belief rule). But the Court need not address that issue here because Defendant has satisfied its burden under either standard.

First, Plaintiff argues that Defendant's decision to surveil him demonstrates pretext for retaliation because (1) Hyundai concluded that Prichard had a "suspicious pattern" of using FMLA leave on Fridays before non-production days based only on a 2018 calendar showing when Prichard used FMLA leave; (2) Hyundai could have referred the decision to the ERC but did not; and (3) the decision to surveil him was not based on a standard policy defining how many Fridays off constituted a suspicious pattern warranting surveillance. Even assuming these facts are true, Prichard's assertions amount to nothing more than criticisms of Hyundai's investigation and evaluation process, which is not enough to show pretext. *See Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (stating that plaintiff must meet an employer's proffered reason "head on and rebut it," not "simply quarrel[] with the wisdom of that reason"); *Kariotis*, 131 F.3d at 677 (stating that plaintiff's "energy is misspent by attacking the company's decisional process" unless plaintiff can "point to facts suggesting that the company investigated her differently" based on a protected characteristic).

It is undisputed that, when Burns approved surveillance of Prichard, Prichard had taken FMLA leave on four out of seven working Fridays in 2018. Based on that information, Hyundai reasonably suspected that Prichard was misusing his FMLA leave, and "that [Hyundai] was suspicious or that its suspicions were confirmed does not raise an inference that [it] acted with a retaliatory motive." *Connel v. Hallmark*

*Cards, Inc.*, No. 01-2060, 2002 WL 188467, at *7 (D. Kan. Feb. 1, 2002); *see Callison v. City of Philadelphia*, 430 F.3d 117, 121 (3d Cir. 2005) ("Nothing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave . . . ."). Further, Plaintiff offers no comparator evidence that his case was investigated differently than anyone else's. And the fact that Hyundai has no standard policy defining what constitutes a suspicious pattern of taking FMLA leave but instead uses a committee to evaluate suspected abuses of FMLA and other types of leave does not create an inference of retaliatory motive. *Stanley v. Honda Mfg. of Ala., LLC*, No. 4:06-cv-695, 2007 WL 9711597, at *8 (N.D. Ala. July 18, 2007) ("Courts do not sit as 'super-personnel boards' to pass on the wisdom of employers' decisions but rather must determine whether there is evidence of [retaliation].").

Second, Plaintiff argues that Hyundai did not have (and could not have had) a good faith belief that Prichard misused FMLA leave because Gordy, the decisionmaker, did not know at what time Prichard called in to report his FMLA leave on March 2, 2018. This purported evidence of pretext is tantamount to no evidence at all. It is undisputed that Gordy knew the following at the time of his decision to terminate Prichard: Prichard had a recent pattern of using FMLA leave on Fridays before non-production days; Hyundai hired a private investigator to surveil Prichard on Friday, March 2; the investigator followed Prichard to

14

Birmingham that morning, lost him, and returned to Prichard's home to continue surveillance; Prichard called in to use FMLA leave that day; Prichard's shift started at 2:30 p.m.; the investigator reported that Prichard was not home from at least 2:30 p.m. to 3:35 p.m.—time that Prichard was supposed to be bedbound and unable to work; and Prichard refused to answer questions about his whereabouts on March 2. All of these facts support Gordy's good faith belief that Prichard misused his FMLA leave, even if the facts presented to him or his conclusion was ultimately incorrect.

Finally, Plaintiff erroneously argues that the fact that Hyundai questioned him about his use of FMLA leave on March 2 suggests that Hyundai had a retaliatory motive. Nothing prohibits an employer from lawfully investigating employee misconduct. *See generally Total Sys. Servs., Inc.*, 221 F.3d at 1176 (noting that this kind of investigation is part of "conducting the company's own business"). This principle applies equally to suspected abuse of FMLA leave. *See generally Andrews v. CSX Transp., Inc.*, No. 3:06-cv-704, 2010 WL 6792993, at *2 (M.D. Fla. Dec. 20, 2010) (recognizing that an employee on leave does not possess greater rights than an employee not on leave). In fact, an employer is prudent to conduct such an investigation.

Here, as part of its investigation and in light of the investigator's report, Hyundai attempted to obtain Prichard's statement about his whereabouts on March 2. Prichard refused to give a statement. As a result, the only account Gordy was able

to consider in his decision was the investigator's account. This fact does not undermine Gordy's good faith belief that Prichard misused his FMLA leave—it bolsters it. *See Jackson*, 751 F. App'x at 512 (noting that plaintiff's attendance at concert when she was on medical leave "compounded by her unwillingness to discuss it demonstrate the reasonableness" of the employer's good faith belief that she misused her leave).

The only other potential evidence of pretext Plaintiff could rely on is the temporal proximity between his use of FMLA leave on March 2 and his termination on April 2. But this evidence, without more, is insufficient to allow a jury to conclude that Hyundai terminated Prichard to punish him for taking leave rather than because of its concern that Prichard was abusing his leave. "This is particularly true where, as here, the employer has a history of granting FMLA leave without penalizing its employees, including [Prichard]." *Daugherty v. Mikart, Inc.*, 205 F. App'x 826, 828 (11th Cir. 2006). Defendant presented undisputed evidence that approximately one-third of its workforce received FMLA leave each year between 2015 and 2018, and Prichard himself took FMLA leave numerous times in 2013, 2014, 2015, 2016, 2017, and 2018, which undercuts any potential inference of retaliation created by temporal proximity in this case. In fact, Prichard consistently took intermittent FMLA leave for *five years* before he was terminated.

Put simply, Plaintiff has not produced evidence to allow a reasonable jury to find that Defendant held anything other than a reasonable belief that he falsified his FMLA leave on March 2, 2018, and because Plaintiff has failed to produce any such evidence, his retaliation claim fails.

## CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**.

A final judgment will be entered separately.

**DONE** and **ORDERED** this 7th day of October 2019.

                                               /s/ Andrew L. Brasher
                                    ANDREW L. BRASHER
                                    UNITED STATES DISTRICT JUDGE